# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

MURRAY HADDEN,

    PLAINTIFF,

v.                                          CASE NO.: CV-05-J-2140-NE

SOUTHEASTERN BOLL WEEVIL
ERADICATION FOUNDATION, INC.,

    DEFENDANT.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 13), and a memorandum and evidence in support of said motion (doc. 14), to which the plaintiff has responded by submitting evidence (doc. 25) and a response in opposition to said motion (doc. 24). Having considered the pleadings, evidence and memoranda of the parties the court finds as follows:

### I. Factual Background

Plaintiff sues his prior employer for discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621, *et seq*.

The plaintiff began working for the defendant in 1989, in Dublin, Georgia. Plaintiff depo. at 11. He transferred to Alabama in 1992, and remained here until he

1

was terminated by his employer on December 2, 2004. Craft depo. at 103.[1]; plaintiff depo. at 11. He was sixty-seven years old at the time of his termination. Plaintiff exhibit 14. The defendant is a non-profit organization which oversees field work involved in eradication of the boll weevil. Craft depo. at 16, 23-24; plaintiff depo. at 12.

The defendant is charged with a program for eradication of the boll weevil in six states, including Alabama. Craft depo. at 18-19. The area covered is divided into regions. *Id*. at 17-19. Because the boll weevil is considered eradicated from Alabama, most of the defendant's offices in Alabama were closed. *Id*. at 19. One office in North Alabama and one office in South Alabama remain open. *Id*.

The plaintiff's termination was pursuant to a lay-off by the defendant. According to the defendant, yearly lay-offs are necessary because the defendant's mission, eradication of the boll weevil, has been accomplished in Alabama.[2] Craft depo. at 32, 76; plaintiff depo. at 14-16. The amount of work to do for the program is reduced each year. Plaintiff depo. at 16. Plaintiff's supervisor, Chris Craft, is given budget numbers each year and from there determines how many employees he

---

[1]Chris Craft is in charge of the defendant's north Alabama office in Athens, Alabama. Craft depo. at 19, 108. His title is Officer in Charge ("OIC"). Craft depo. at 21-22.

[2]In 2003 the plaintiff's job title changed from a field unit supervisor to a field service officer because the field unit supervisors no longer had anyone to supervise due to layoffs which ensued after eradication of the boll weevil. Craft depo. at 29-32; plaintiff depo. at 16-18.

has to lay off. Craft depo. at 75-77. For the December 2004 layoff, Craft determined he had to eliminate two full time and two part time positions. *Id*. at 77. Prior to the lay-off, Craft had ten full-time employees. *Id*. at 79. He now has seven. *Id*. at 22-23.

Craft made the decision as to which employees to lay-off, with input from his assistant, Landus Elledge. Craft depo. at 78, 144-145. Along with the plaintiff, Adondalyn Campbell was terminated. *Id*. at 79. To determine who to lay off, Craft examined past performance, the actual territory each person worked and where within that territory cotton was located, and how easy each area would be to consolidate with another territory. *Id.* According to Craft, the plaintiff had the smallest territory with the fewest fields because he was not able to cover more. *Id*. at 61-62. He asserts he simply did not consider age as a relevant factor. *Id*. at 83. The defendant never gave any indication that the plaintiff's age was a relevant factor in determining who to lay off and the plaintiff has no evidence otherwise. Plaintiff depo. at 95-96.

According to Craft, the plaintiff missed a lot of traps, although all traps were required to be scanned. Craft depo. at 87-88; plaintiff depo. at 56, 59. Craft stated that he needed people who could complete their assignments without assistance. Craft depo. at 126. The plaintiff and Adondalyn Campbell were consistently the two worst performers. *Id*. at 126, 145. The plaintiff serviced the fewest traps each three-week cycle in 2004 except for one occasion when he was third to last on the number

of traps services. *Id.* at 87-88, 127, 138. The plaintiff also had the highest number of errors and traps missed. *Id.* at 130; plaintiff depo. at 54-56, 60, 75. The plaintiff admits he had the highest number of traps not scanned, and testified as follows:

> Q. I believe there was (sic) ten or so FSOs in total at the Athens unit. And this information indicated that you had the highest missed traps.
> A. I discovered that fact in the EEOC meeting.
> Q. Okay. So regardless of when you discovered that, do you dispute that that's accurate?
> A. As far as I know, that is accurate from missed traps, missed scanned traps, not necessarily missed service traps. You can service a trap and not scan it.
> Q. We've already said earlier that scanning was part of your job as –
> A. Absolutely, absolutely.
> ....
> Q. But, nonetheless, this data indicated that you missed 47 traps. And that ratio of missed traps per total traps, you had .041 percent, which is the highest of all ten FSOs.
> A. Yes, sir.

Plaintiff depo. at 54-56.

> Q. You agree and acknowledge that you did have the highest number of traps missed?
> ...
> A. Yes. According to that, I had the most missed scanned traps.
> ...
> A. Like I told you, I had the highest number of missed scanned traps.
> Q. I see. And isn't it true, Mr. Hadden, that you generally had the lowest number of acreage of all FSOs. You had the least acreage to work than any of the other FSOs?
> A. That is true.

Plaintiff depo. at 59-60.

The plaintiff also installed the fewest number of traps during the relevant time. Craft depo. at 133, 139. Although he knew it was in violation of the defendant's policy, the plaintiff hired a friend to help him perform his job duties in 2003. Plaintiff depo. at 78-80. At times, other individuals, including Craft, helped the plaintiff check his traps. Craft depo. at 73-74.

No one has been hired by the defendant since the plaintiff was laid-off. Craft depo. at 121. In the December 2, 2004, letter of lay off to the plaintiff, Craft stated he had been an excellent employee and would be happy to provide him recommendations in the future. *Id*. at 103.

The plaintiff asserts that Craft did not do anything wrong in deciding to lay him off, but he was the only person in the North Alabama office who was moved from one state to another, he was the oldest employee in the office and the one with the most tenure. Plaintiff depo. at 125. The plaintiff thought that the last person hired should have been the first one laid-off. *Id*. at 125-126. His main complaint is that the executive director's brother was hired in the South Alabama region and was given some of the plaintiff's territory after the plaintiff was terminated.[3] *Id*. at 127. The plaintiff also states he believes he was fired because of his age and health conditions. *Id*. at 129, 137.

---

[3] Jim Brumley is Craft's boss and the executive director for defendant. Craft depo. at 19-20. The South Alabama territory is supervised by John Carter. *Id*.

The plaintiff agrees that, after he was hospitalized in 2004, he could not complete his work on time, even though completion in a timely manner was a job requirement. Plaintiff depo. at 48-50. He testified:

> Q. .... You had to have help completing the Jackson County fields .... So you admit that you couldn't complete the work for these properties?
> A. Not after being in the hospital, no, sir, I couldn't.
> Q. Regardless of what the reason was, you admit you could not complete your job?
> A. Not on time. I could have completed the job, but it would not have been within the two-week time frame.
> Q. And that was a job requirement?
> A. Yes, sir.
> Q. So you couldn't have job timely you admitted; correct?
> A. Correct.
> Q. Which means you couldn't have done the job?
> A. Correct.
> Q. Because the timeliness of it is part of your job?
> A. Correct.

Plaintiff depo. at 49-50.

When asked about evidence he had in support of his claim, the plaintiff responded, "It's common sense." Plaintiff depo. at 137.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986).   As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23.  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial."   Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).  The non-movant must "demonstrate that there is indeed a material issue of

fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

### III.  LEGAL ANALYSIS

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). With these standards in mind, the court considers the plaintiff's claims.

To establish a prima facie case of age discrimination in the context of a reduction in force, the plaintiff must show (1) that he is within the protected age group; (2) that he is adversely affected; (3) that he is qualified to assume another position at the time of discharge, and (4) either direct or circumstantial evidence from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue. *Rowell v. BellSouth Corp.*, 433 F.3d 794, 798 (11th Cir.2005); *Smith v. J. Smith Lanier & Co.,* 352 F.3d 1342, 1344 (11th Cir.2003). To satisfy the last prong, the Eleventh Circuit elaborated that the "plaintiff [must] produce some evidence that an employer has not treated age neutrally, but has instead discriminated based upon it. Specifically, the evidence must lead the factfinder reasonably to conclude either that the defendant (1) consciously refused to

consider retaining or relocating a plaintiff because of his age, or (2) regarded age as a negative factor in such consideration." *Rowell,* 433 F.3d at 798. The Eleventh Circuit has also allowed plaintiffs to meet their prima facie burden by presenting statistical evidence of a pattern or practice of discrimination which "allows the reasonable inference that age played a role in [the plaintiff's] discharge." *Pace v. Southern Railway System*, 701 F.2d 1383, 1388 (11th Cir.1983).

Assuming plaintiff meets this burden, the defendant must articulate a legitimate, non-discriminatory reason for its employment decision. *Steger v. General Electric Co.,* 318 F.3d 1066, 1075 (11th Cir. 2003). However, the employer's burden is merely one of production; it "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Chapman v. AI Transport,* 229 F.3d 1012, 1024 (11th Cir.2000)(citations omitted). Under Eleventh Circuit law, the plaintiff must prove only that his age "made a difference" in the defendant's decision to terminate him. *Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1322, 1335 (11th Cir.1999).

The parties do not dispute that the plaintiff is within the protected age group, that he was qualified for his job, or that he suffered an adverse employment action.[4]

---

[4]A reduction in force, by definition, generates adverse employment actions, which of course are lawful if not based on impermissible characteristics such as age. *Rowell v. BellSouth*

However, the plaintiff must also demonstrate that his age made a difference in the decision to select him for the lay off.  The plaintiff fails to meet this burden.  He was not replaced and admits that he was the worst performer in his region.  The plaintiff even agrees that his supervisor, who made the determination of who to lay off, did nothing wrong.  Rather, the plaintiff argues that he should have been given special consideration due to his longevity with the defendant.  Plaintiff depo. at 128.  The court can find no legal basis on which to take this into consideration on the issue of whether the plaintiff's age was considered by the defendant in determining whom to lay off.

While the plaintiff makes an extensive argument that he was an exemplary employee, his own testimony refutes this argument.  Additionally, this is not a case where the plaintiff was terminated for alleged wrongdoing.[5]  Rather, the sole issue before the court is whether the plaintiff's age played any role at all in the Craft's decision to pick plaintiff for a lay off.

The plaintiff argues that each year, Craft selected the oldest individuals under his supervision for lay offs.  See plaintiff's response, at 10.  The court has considered the evidence submitted by the plaintiff in support of this proposition.  *See* plaintiff

---

*Corp.*, 433 F.3d 794, 798 (11th Cir.2005).

[5]Even assuming plaintiff was an exemplary employee, the evidence supports that he was the worst performer supervised by Craft.  These concepts are not mutually exclusive.

exhibits 14-16.  The Eleventh Circuit has held that even if statistics can be used to establish a pattern of discrimination against a class of individuals, the individual plaintiff must still be able to demonstrate that the adverse employment action directed against him was a result of such discrimination. *See Thurman v. Robertshaw Control Co.,* 869 F.Supp. 934, 939 (N.D.Ga.,1994), citing *Carmichael v. Birmingham Saw Works,* 738 F.2d 1126, 1131 (11th Cir.1984) (other citations omitted).  In the facts before this court, the plaintiff admits he was not able to do his job in a timely manner. He admits that completing specified work in a timely manner was part of his job and even agrees that therefore, he was not able to do his job.   Thus, the plaintiff cannot show that **his** lay off was the result of discrimination.  Defendant supports with evidence Craft's assertion that he chose the two worst performers, which is a legitimate, non-discriminatory reason for an employment decision.  The plaintiff agrees that he made mistakes, skipped trapped and did not get his work finished on time, which was a job requirement.  These are legitimate business considerations. This court's place is not to second guess the decisions of employers, as long as those decisions are not based on discriminatory reasons.  *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1244 (11th Cir.2001). *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir.1997) ("federal courts do not sit to second-guess the business judgment of employers").

The plaintiff also alleges that a younger individual, David Brumly, was given his territory after his lay off. However, that individual was not employed by the North Alabama region, and not supervised out of that office. Chris Craft, the supervisor of the north Alabama region, determined he had to lay off two full time employees to bring his budget within the numbers he was given. He testified no one told him whom to terminate and that he was solely responsible for that decision with input from his assistant. The plaintiff has no explanation for how he could have been replaced by David Brumly when his supervisor, who made the decision of whom to terminate, did not supervise David Brumly. Craft depo. at 108. However, the plaintiff also states that, because David Brumly is Jim Brumly's brother, he should have never been hired. Plaintiff depo. at 127-128. *See also* Craft depo. at 107. The propriety of hiring David Brumly is not properly before the court in this case.[6] The fact that a portion of the plaintiff's territory was later reassigned to David Brumly does not make the defendant's decision suspect. There is no evidence that Craft's supervisor, Jim Brumly, or the supervisor of the South Alabama region had any input into who was laid off from the North Alabama region.

---

[6]In other words, even if David Brumly was hired specifically to replace plaintiff, if he was hired because he is the brother of Jim Brumly as plaintiff alleges, and not because he is younger than the plaintiff, this is not relevant to the issue of whether age played a role in the determination to lay off plaintiff.

## IV. CONCLUSION

Having considered the foregoing, and being of the opinion that the defendant's motion for summary judgment is due to be granted, the court shall grant said motion by separate Order.

**DONE** and **ORDERED** this the 7th day of September, 2006.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE